1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X
UNITED STATES OF AMERICA,          : 14-CR-00105(MKB)
                                   :
                                   :
     -against-                     :
                                   :
JORGE ESTRADA-TEPAL, RICARDO       : United States Courthouse
ESTRADA-TEPAL AND VICTOR           : Brooklyn, New York
ESTRADA-TEPAL,                     :
                                   :
          Defendants.              : Tuesday, December 15, 2015
                                   : 10:30 a.m.
                                   :
- - - - - - - - - - - - - X
          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
            BEFORE THE HONORABLE MARGO K. BRODIE
                UNITED STATES DISTRICT JUDGE

               A P P E A R A N C E S:

For the Government:          ROBERT L. CAPERS, ESQ.
                             United States Attorney
                             Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, New York 11201
                             BY:  TARYN A. MERKL, ESQ.
                                  MELODY WELLS, ESQ.
                             Assistant United States Attorneys


For the Defendant:           ADAM D. PERLMUTTER, ESQ.
Jorge Estrada-Tepal          260 Madison Avenue, Suite 1800
                             New York, New York 10016


For the Defendant:           JOHN S. WALLENSTEIN, ESQ.
Ricardo Estrada-Tepal        1100 Franklin Avenue, Suite 100
                             Garden City, New York 11530


For the Defendant:           RICHARD B. LIND, ESQ.
Victor Estrada-Tepal         880 Third Avenue, 13th Floor
                             New York, New York 10022


Court Reporter:              SHERRY J. BRYANT, RMR, CRR


Also Present:                ROSA OLIVERA, SPANISH INTERPRETER
                             SPECIAL AGENT CHRISTOPHER DAVIES, HSI
                             LYNLY EYGES, VICTIM ADVOCATE
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

PROCEEDINGS                                    2

1           (In open court.)

2           (Defendants present.)

3           COURTROOM DEPUTY:  This is criminal cause for

4    sentencing in Docket Number 14-CR-105, USA versus Jorge

5    Estrada-Tepal, Ricardo Estrada-Tepal, Victor Leonel

6    Estrada-Tepal.  Spanish interpreter already sworn.  Counsel,

7    one at a time please state your name for the record.

8           MS. MERKL:  Good morning, Your Honor.  Taryn Merkl

9    for the United States.  With me is Melody Wells and Special

10   Agent Christopher Davies of the Department of Homeland

11   Security, Homeland Security Investigations.

12          THE COURT:  Good morning, everyone.

13          MR. PERLMUTTER:  Good morning, Your Honor.  For

14   Jorge Estrada-Tepal, Adam Perlmutter.  My client is seated to

15   my right.

16          THE COURT:  Good morning, Mr. Perlmutter.  Good

17   morning Mr. Jorge Estrada-Tepal.

18          DEFENDANT JORGE ESTRADA-TEPAL:  Good morning.

19          MR. WALLENSTEIN:  Good morning, Your Honor.  John

20   Wallenstein for Ricardo Estrada-Tepal.  Ricardo is in the

21   center of the three defendants here.

22          THE COURT:  Good morning, Mr. Wallenstein, and good

23   morning, Mr. Ricardo Estrada-Tepal.

24          DEFENDANT RICARDO ESTRADA-TEPAL:  Good morning.

25          MR. LIND:  Good morning, Judge.  Richard Lind for

PROCEEDINGS                                       3

1   Victor Estrada-Tepal, who is seated right next to Mr.

2   Wallenstein in the blue uniform.

3            THE COURT:  Good morning, Mr. Lind, and good

4   morning, Mr. Victor Estrada-Tepal.

5            DEFENDANT VICTOR ESTRADA-TEPAL:  Good morning.

6            THE COURT:  We're here for sentencing today in this

7   matter and before I get started I want to, one, accept your

8   guilty pleas and then discuss all the documents that I have in

9   my possession to make sure I'm not missing any document.  If

10  the interpreter needs me to slow down at any point, please

11  tell me and I will do so.

12           So I have Mr. Jorge Estrada-Tepal's guilty plea from

13  January 15th, 2015, which was before Magistrate Judge Levy,

14  and he pled to the second superseding indictment, Counts One

15  and Two, sex trafficking conspiracy and trafficking of Jane

16  Doe #1.  I've reviewed the plea allocution of Mr. Jorge

17  Estrada-Tepal and I find it to be a voluntary and knowing plea

18  and that there is a factual basis for the plea, and so I

19  accept his plea of guilty to Count One and Count Two of the

20  superseding indictment.

21           Mr. Victor Estrada-Tepal pled guilty on January 13,

22  2015, before Magistrate Judge Levy to Counts One and Five.

23  I've reviewed his plea allocution also and find it to be

24  voluntary and knowing and that there is a factual basis for

25  the plea and I, therefore, accept his plea of guilty to those

PROCEEDINGS                                    4

1   two counts of the superseding indictment.

2           I've reviewed Mr. Ricardo Estrada-Tepal's plea which

3   took place on January 14th, 2015, before Magistrate Judge Levy

4   also, and he pled guilty to Counts One and Four of the

5   superseding indictment.  I've reviewed his plea allocution and

6   find it to be voluntary and knowing and that there is a

7   factual basis for the plea and I, therefore, accept his guilty

8   plea also.

9           What I have before me is a presentence report for

10  each defendant.  As to Jorge Estrada-Tepal, it's dated July

11  22nd, 2015; as to Victor Estrada-Tepal, it's dated June 17,

12  2015; and as to Ricardo Estrada-Tepal, it's dated June 5th,

13  2015.

14          In addition to the presentence reports, I also have

15  two addenda to the PSR for Jorge:  One filed on September 11,

16  2015, dealing with objections from the defendant; and one

17  filed on November 30th, 2015, addressing the government's

18  objections.  As to Victor Estrada-Tepal, I also have an

19  addendum to the PSR that was filed on September 11th, 2015.

20  And as to Ricardo Estrada-Tepal, I have an addendum that was

21  filed on November 25th, 2015.

22          I also have sentencing memoranda from each

23  defendant.  On behalf of Jorge, it was filed on September 4th

24  of 2015; on behalf of Victor, filed on September 10th of 2015;

25  and on behalf of Ricardo, filed on September 10th, 2015.

```
                        PROCEEDINGS                    5
```

1         I have a letter from the government filed on

2    September 14, 2015, as to all defendants.

3         In addition, I have documents, statements from

4    several victims.  On September 10, 2015, counsel for Jane Doe

5    #3 gave an affidavit of loss to the Probation Department,

6    which I have and I have reviewed.  On September 15th, 2015, I

7    received a letter from the government which enclosed a

8    September 8th, 2015, letter from Jane Doe #2.  And on December

9    11, 2015, I received a letter from the government enclosing an

10   undated statement by Jane Doe #1.

11        These are all the documents that I have that I've

12   read and reviewed in preparation for the sentencing today.  I

13   also have recommendations from the Probation Department for

14   each defendant.  I've reviewed those also and I'm now going to

15   share them with the parties.

16        MS. MERKL:  Your Honor, sorry for the interruption,

17   but I just noticed as you were speaking about the Probation

18   Department documents that probation is not present.  And I

19   know there was a change in schedule, so I don't know if they

20   are not here because they have a conflict or because of the

21   change in schedule.  I just wanted to alert the Court.

22        THE COURT:  I'm aware they're not here.  I don't

23   know why they're not, but I don't believe they need to be here

24   for me to move forward with the sentence.

25        MS. MERKL:  I concur.  I just wanted to make sure

PROCEEDINGS                                    6

1    you were aware.

2              THE COURT:  I'm going to give the attorneys a minute

3    to review that and to discuss the recommendation with their

4    client.  The rest of the document contains information that is

5    also in the probation report.  But before I do, I just want to

6    find out from the parties whether or not I'm missing any

7    document that was filed.

8              MR. PERLMUTTER:  There's nothing from Defendant

9    Jorge Estrada-Tepal, Judge.

10             THE COURT:  Okay.

11             MR. WALLENSTEIN:  Your Honor, with respect to

12   Ricardo, I believe you have everything that was submitted.

13             THE COURT:  Okay.

14             MR. LIND:  Judge, I believe that -- maybe I missed

15   something, but I don't think you mentioned one document which

16   I received and I think the government received it also.  A

17   second addendum dated November 25th.

18             THE COURT:  As to your client?

19             MR. LIND:  As to my client.

20             THE COURT:  No, I don't have that.  I only have --

21             MR. LIND:  I only have one copy, Judge, but I'll

22   hand you up my copy.

23             THE COURT:  I can look it up online, Counsel.

24             MR. LIND:  It's dated November 25th, 2015.

25             THE COURT:  Okay.  Yes, I only have the September

1  addendum.  Online, I don't have anything, Counsel.  I did

2  check last night to double-check that I've looked at all the

3  documents, and I just had my courtroom deputy check online and

4  I don't have a second addendum for your client.

5           Does the government have a second addendum?

6           MS. MERKL:  No.

7           THE COURT:  So it appears, Mr. Lind, that only you

8  got a copy of this.

9           MR. LIND:  I'm a special guy, Judge.

10           THE COURT:  Was it filed online?

11           MR. LIND:  I think he may have sent it to me by

12  e-mail.  I don't know how I got it, but I got it.

13           THE COURT:  The probation officer?

14           MR. LIND:  From the probation officer.

15           THE COURT:  Okay.

16           MR. LIND:  It's a response to the government's --

17  you never saw this?

18           MS. MERKL:  No.

19           MR. LIND:  Do you want to read it?  Why don't you

20  read it and then give it to the judge.

21           THE COURT:  Why don't I have copies made and that

22  way the government can have a copy and the Court can have a

23  copy.  And while we do that, can the defense attorneys please

24  take a minute to individually explain to your client what

25  probation's recommendation as to sentence is.

PROCEEDINGS                                    8

1          (Defendants confer with counsel.)

2          THE COURT:  Okay.  Have the attorneys had an

3    opportunity to explain the Probation Department's

4    recommendation to their client?  Have the parties had an

5    opportunity to explain the recommendation to their client?

6          MR. PERLMUTTER:  Yes, Your Honor.

7          THE COURT:  You don't have to stand, Counsel.  You

8    can stay seated.

9          MR. WALLENSTEIN:  Yes, Your Honor, I've explained it

10   to Ricardo.  I am satisfied he understands it.  And I asked

11   him if he had any questions and he said no.

12         THE COURT:  Okay.

13         MR. LIND:  I've explained it to Victor

14   Estrada-Tepal, Judge.

15         THE COURT:  Okay.  And I have reviewed the second

16   addendum to the presentence report from Mr. Victor

17   Estrada-Tepal.  It addresses the government's objections with

18   regard to the vulnerable victim enhancement.

19         MS. MERKL:  Your Honor.

20         THE COURT:  Yes.

21         MS. MERKL:  Counsel for Jane Doe #1 just brought to

22   the government's attention that Jane Doe #1 also filed an

23   affidavit of loss with the Probation Department.  And I would

24   note, Your Honor, that in the PSRs the amounts claimed by the

25   various Jane Does are reflected.  I don't know if the actual

PROCEEDINGS                                            9

1   affidavit of loss was transmitted to the Court, but the

2   information has been transmitted to the Court within the PSR.

3           THE COURT:  Correct.  I have the information with

4   regard to the loss amount for three different Jane Does, Jane

5   Doe #1, Jane Doe #2 and Jane Doe #5, but in terms of actual

6   letters I only have statements from Jane Does #1 and #2 in

7   letter form, and Jane Doe #5 I believe as submitted by the

8   Probation Department.

9           Okay.  Have each of the attorneys reviewed the

10  presentence report and various -- Mr. Lind, can you have a

11  seat, please.

12          Have each of the attorneys reviewed with their

13  clients the presentence report and the various addendum or

14  addenda, as in the case of Mr. Victor Estrada-Tepal and

15  Mr. Jorge Estrada-Tepal?

16          MR. PERLMUTTER:  Yes, Your Honor.

17          THE COURT:  Have you reviewed and discussed them

18  with your clients?

19          MR. WALLENSTEIN:  Your Honor, with respect to

20  Ricardo, I have reviewed all of the documents in the case that

21  the Court has mentioned, the PSR, the various memoranda and

22  addenda down at the jail, with the assistance of the

23  Spanish-speaking paralegal the Court appointed for me.

24          THE COURT:  Okay.

25          MR. LIND:  Judge, with respect to Victor

PROCEEDINGS                    10

1   Estrada-Tepal, I've gone over the PSR, my letter, our

2   objections, the government's response, the two addenda.  So

3   I've gone over all those documents with my client.

4           MR. PERLMUTTER:  The same for Jorge Estrada-Tepal,

5   Judge.

6           THE COURT:  Okay.  In terms of the calculation of

7   the advisory guideline, I appreciate that the government's

8   calculation is different in the plea agreement offered to the

9   defendants from that of the Probation Department, and that

10  seems to be driven mostly by the fact that the Probation

11  Department included a full level enhancement for vulnerable

12  victim, which is objected to by Mr. Victor Estrada-Tepal.

13          MR. LIND:  Judge, just a minor correction.  It's a

14  two-level enhancement.

15          THE COURT:  Two-level enhancement, you are correct,

16  Counsel.

17          Would the parties like to be heard further on that?

18  I reviewed your objection to that.  I've also seen the

19  government's letter with regard to its position, and I

20  reviewed the addendum by the Probation Department as to your

21  client.

22          MR. LIND:  Judge, I just don't think -- it's an

23  interesting question, but I don't think that these clients

24  fall within the category of unusually vulnerable victims, and

25  I don't think it's appropriate here and I think that the

SHERRY BRYANT, RMR, CRR

PROCEEDINGS                                    11

1    government is even more forceful in this situation than my

2    letter was.

3              THE COURT:  Well, the government's argument is very

4    different from yours.  As I understand your argument, you are

5    saying that these victims are, in fact, not vulnerable

6    victims.  The government's position is that they are

7    vulnerable victims, but that with regard to the particular

8    victim for which your client received an enhancement he didn't

9    sufficiently interact with that victim, so they're not

10   prepared to prove up that, in fact, he's responsible and

11   should receive that enhancement.

12             Is that the government's position, as I understand

13   it?

14             MS. MERKL:  That's fair, Your Honor.  And with

15   regard to the second victim as to which Mr. Victor

16   Estrada-Tepal is responsible for, she's identified in the

17   indictment as Jane Doe #5 and, as the Court knows, she was a

18   codefendant in this case.  She was the woman who Mr. Victor

19   Estrada-Tepal was married to and brought to this country as a

20   minor.  So we are not in a position to present her testimony.

21             THE COURT:  Understood.  But isn't Victor also

22   attributed with having engaged in some unlawful conduct as to

23   Jane Doe #2?

24             MS. MERKL:  Yes, Your Honor.  And as to that victim,

25   the Court's summary of our position is accurate.  I just was

1    amplifying as to Jane Doe #5.

2          THE COURT:  Okay.  So, Mr. Lind, I reject your

3    argument that these victims are not vulnerable.  It is very

4    clear to me that they are, for all of the reasons stated in

5    the PSR.  They are poor, uneducated women who were taken

6    advantage of by the defendants and brought to the United

7    States, isolated away from their family.  They fall within the

8    definition of vulnerable victim.

9          As to the government's position that as to Jane Doe

10   #2 your client didn't have sufficient interaction maybe to

11   realize her vulnerability, I reject that also.  The facts in

12   the PSR and Jane Doe #2's letter support that she interacted

13   with Victor frequently and that she specified as to at least

14   one incident involving Victor.

15         I don't see how Victor could have interacted with

16   Jane Doe and not recognized her vulnerability, and so I'm

17   rejecting both your arguments, your argument and that of the

18   government, and I'm finding that this enhancement does apply

19   to your client.

20         I don't believe there are any other objections to

21   the calculation other than the government asking me to rely on

22   the calculation as set forth in their plea agreement.

23         MR. LIND:  I think, Judge, my recollection of the --

24   this is Richard Lind for Mr. Victor Estrada-Tepal.

25         My recollection is that the government -- that the

PROCEEDINGS                    13

1  parties agreed to a one-point reduction for a global plea,

2  which is a significant factor here --

3          THE COURT:  Correct.

4          MR. LIND:  -- among all defendants.

5          THE COURT:  I'm going to go through that, Counsel.

6  I'm just asking whether or not there are any further

7  objections to the calculations by the Probation Department.

8          MR. LIND:  I have none.

9          THE COURT:  Okay.  As to each defendant, first Jorge

10 Estrada-Tepal, according to the Probation Department, the

11 total offense level is a 38.  I believe they did not account

12 for the one-point global disposition that the government

13 agreed to.  Is that accurate, Counsel?

14         MS. MERKL:  It is.

15         MR. PERLMUTTER:  That is correct, Judge.

16         THE COURT:  So as to Jorge, that's reduced by one

17 level.  So that's level 37.  He has no criminal history point,

18 a Criminal History Category of I.  Level 37 corresponds to a

19 guideline range of 210 to 261 months, and there's also a

20 supervised release term of five years to life.  In addition,

21 the fine range is 20,000 to 200,000 and there's a $200 special

22 assessment.

23         Is there any objection to that?

24         MR. PERLMUTTER:  No, Your Honor.

25         THE COURT:  By the government?

PROCEEDINGS                    14

1          MS. MERKL:  No objection.

2          THE COURT:  As to Victor Estrada-Tepal, the PSR

3    indicates that it is a level 38 total offense level.  With a

4    one-point reduction, that's also a level 37.  Zero criminal

5    history points classified into a Criminal History Category of

6    I and a guideline range of 210 to 261 months, supervised

7    release term of five years to life, and a fine range of 20,000

8    to 200,000.

9          Is there any objection to that other than your

10   stated objection with regard to the two-level enhancement for

11   vulnerable victim, Mr. Lind?

12         MR. LIND:  No, Judge.

13         MS. MERKL:  No, Your Honor.

14         THE COURT:  And as to Ricardo, the PSR indicates

15   that it's a total offense level of 36.  With a one-point

16   reduction for global disposition, that's a level 35.  Zero

17   criminal history points resulted in a Criminal History

18   Category of I and a corresponding guideline range of 168 to

19   210 months.  There's also a supervised release term of five

20   years to life and a fine of 20,000 to 200,000.

21         Is there any objection to that?

22         MR. WALLENSTEIN:  Judge, I don't believe that I

23   filed a formal objection to the vulnerable victim enhancement

24   which the government does not seek as to Ricardo.

25         THE COURT:  You did not, but it is in the PSR.

PROCEEDINGS                          15

 1              MR. WALLENSTEIN:  I understand that.  That puts him

 2    at 36.  Without that, it puts him at 34, which would be

 3    reduced to 33.

 4              THE COURT:  Are you now filing --

 5              MR. WALLENSTEIN:  I am now joining in the

 6    government's objection.

 7              THE COURT:  So the basis for your objection as to

 8    Ricardo with regard to vulnerable victim?

 9              MR. WALLENSTEIN:  Is that the government does not

10    have any evidence of their vulnerability as to Jane Does #2

11    and 3 other than ages and backgrounds, as the government's

12    memorandum indicates.  So I join in that argument, and I also

13    point out that we did not believe that that was warranted or

14    contemplated by the guilty pleas.

15              THE COURT:  Ms. Merkl?

16              MS. MERKL:  Your Honor, I'm just double-checking.

17    As set forth in our sentencing submission, we do believe that

18    Ricardo was knowledgeable regarding the unusual

19    vulnerabilities of Jane Doe #1, who is certainly part of the

20    conspiracy underlying the conduct, and that's detailed at

21    pages 11 to 12 of our letter.

22              And we're in no way seeking a sentence beyond the

23    guideline range estimated in our plea agreement, which was

24    effectively 180 months, based on our estimate of the guideline

25    range.  But notwithstanding that, we do believe that Ricardo

1   was in a position to have knowledge of the vulnerabilities of

2   at least one of the victims, if not more.

3          THE COURT:  And if I understand correctly, isn't

4   Ricardo responsible for recruiting Jane Doe #2?

5          MS. MERKL:  Yes.

6          THE COURT:  Okay.  So, Counsel, there's no factual

7   support for your argument here that the two-level enhancement

8   should not apply to Ricardo with regard to vulnerable victims.

9   He personally recruited Jane Doe #2.  I don't think you're

10  arguing that Jane Doe #2 was not a vulnerable victim.

11         MR. WALLENSTEIN:  I am not.

12         THE COURT:  So your application for a reduction

13  based on the two level for vulnerable victim is rejected, and

14  so the guideline for Mr. Ricardo Estrada-Tepal is as I

15  calculated.

16         MR. WALLENSTEIN:  I have no other objection to that

17  guideline calculation.

18         THE COURT:  Okay.  Are there any other objections by

19  anyone else?

20         MS. MERKL:  No, Your Honor.  One other just

21  housekeeping matter.  I think that we just wanted to clarify

22  that the restitution figures for 1, 2 and 5 are set forth in

23  the probation reports, but Your Honor also noted that you had

24  received the affidavit of loss as to Jane Doe #3 when you were

25  going through the full volume of documents before the Court.

1   So I just wanted to make sure --

2            THE COURT:  Let me confirm.  What I have and the

3   restitution amount that I have is as stated in the probation

4   report, which is 1,020,075, and that is broken down as to

5   $864,000 for Jane Doe #1, $5,275 for Jane Doe #2, and $150,800

6   for Jane Doe #5.

7            MS. MERKL:  And in addition, Jane Doe #3 had filed

8   an affidavit of loss, and I think that was not ever

9   incorporated into an addendum.

10           THE COURT:  Okay.  Do you have a copy of that,

11   Counsel?

12           MS. MERKL:  I believe I do.  The Court also noted

13   that you had it.

14           THE COURT:  I may have misspoken.  What I did note

15   is what was in the PSR.  Yes.  I believe, was that the

16   affidavit of loss given to probation?  That's victim number 3,

17   not 5.  Let me double-check the PSR.

18           MS. MERKL:  I think the disconnect is that Jane Doe

19   #3's information is not included in the PSR.

20           THE COURT:  Okay.  So what I have is the information

21   that's in the PSR.  I see.  So that is the information for

22   $13,261?

23           MS. MERKL:  Yes.  That's a separate affidavit of

24   loss.

25           THE COURT:  So then the calculation for restitution

PROCEEDINGS                    18

1    purposes will be $1,033,336, including the 13,261 from Jane

2    Doe #3?

3              MS. MERKL:  Thank you, Your Honor.

4              THE COURT:  I'm asking the parties if that is

5    accurate.

6              MS. MERKL:  I believe it is.

7              THE COURT:  Is there any objection from the

8    defendants as to the restitution amount for each of these

9    victims?

10             MR. PERLMUTTER:  No, Your Honor.

11             MR. WALLENSTEIN:  No, Your Honor.

12             MR. LIND:  No, Judge.

13             THE COURT:  Okay.  So in addition to the guidelines

14   calculation, the supervised release term and the fine, I also

15   make the finding that the total restitution amount is

16   $1,033,336.  The breakdown is as follows:  Jane Doe #1,

17   $864,000; Jane Doe #2, $5,275; Jane Doe #3, $13,261; and Jane

18   Doe #5, $150,800, for a total of $1,033,336.  That is my

19   finding as to the calculation of the advisory guideline range.

20             Supervised release term; restitution, which is

21   mandatory; and in addition, each defendant is responsible for

22   a $200 special assessment, $100 for each count that they pled

23   guilty to.

24             Now, turning to the 3553(a) factors, I'm required to

25   and I have considered them, including the advisory guideline,

SHERRY BRYANT, RMR, CRR

PROCEEDINGS                                    19

1   to ensure that I impose an appropriate sentence that is

2   sufficient but not greater than necessary.

3           In addition to the guidelines statements, I must and

4   I've also considered the nature and circumstances of the

5   offense as well as the history and characteristics of each

6   defendant.

7           As I mentioned earlier, I do have victim statements.

8           Ms. Merkl, are there any victims here who would like

9   to address the Court today?

10          MS. MERKL:  Your Honor, I believe there is one

11  victim advocate who wanted to read the letter that was

12  submitted to the Court on Friday.  It's on behalf of Jane Doe

13  #1.  This is her attorney who has been representing her for

14  immigration purposes in connection with her situation.

15          THE COURT:  You can come forward, Counsel.

16          MR. PERLMUTTER:  Your Honor -- this is just to read

17  the letter that's been submitted already?

18          MS. MERKL:  Correct.

19          MR. PERLMUTTER:  Judge, I object to that.  The Court

20  has the letter.  I don't think we have to burden the record

21  further with it.

22          THE COURT:  Your objection is overruled.  This is a

23  sentencing hearing and the victim has a right to speak.  And

24  although I have the letter, the victim's counsel, who is the

25  victim's advocate and representative, has the right to present

SHERRY BRYANT, RMR, CRR

PROCEEDINGS                                    20

1    the statement orally on behalf of the victim.

2             You may come forward and do so.

3             MS. EYGES:  Thank you, Judge.  Lynly Eyges on behalf

4    of victim 1, Urban Justice Center.

5             THE COURT:  You'll have to speak slowly so that the

6    court reporter can take down what you're saying.  Please

7    proceed, Counsel.

8             MS. EYGES:  Thank you, Judge.

9             Dear Judge, I'm writing this letter to you so that

10   you know what my life was like when Jorge was forcing me into

11   prostitution.

12            THE INTERPRETER:  The interpreter requests that the

13   attorney read more slowly and loudly, please.

14            THE COURT:  Do you have a copy of that letter,

15   Counsel?  Can you provide a copy to the interpreter?

16            THE INTERPRETER:  Thank you, Your Honor.

17            MS. EYGES:  Dear Judge.  I am writing this letter to

18   you so that you know what my life was like when Jorge was

19   forcing me into prostitution and you keep what he did to me in

20   mind when you sentence him.  That time with Jorge was

21   horrible.

22            THE COURT:  Go slower, Counsel.

23            MS. EYGES:  And I still have nightmares about him.

24   From 2007 to 2011, Jorge forced me to work in prostitution.  I

25   want to go through a typical day for you so that you can

PROCEEDINGS                    21

1   understand what my life was like for those four years, because

2   almost every single day was the same.

3           THE COURT:  Put the mic in front of you.  Okay.

4           MS. EYGES:  While I was with Jorge, I worked nearly

5   every single day.  On weekdays I usually had to work the day

6   shift, and on weekends I usually had to work the night shift.

7   A day shift started at 10 a.m.  On those days, I would wake up

8   at 9 a.m. usually feeling sick, knowing the day that was ahead

9   of me.

10          Jorge used to leave me a number to call for a car to

11  come and pick me up.  After I woke up, I would call the number

12  that Jorge had left me.  I would shower.  I would try to clean

13  up the room I was living in.  This usually didn't leave much

14  time for breakfast, so I would try to eat something in the

15  car.

16          The car arrived at 10 a.m.  I would get in and

17  immediately feel scared.  I didn't want to be in the car.  I

18  didn't want to go where I knew the car was taking me.  I was

19  scared because one of the first weeks that I worked in the

20  United States, I was attacked by a client.  He put a knife to

21  my face.  I fought back and I got away from him, but my money

22  and cell phone were left there with the client.  The man

23  wanted to hurt me.  I told Jorge about what happened, but he

24  made me go back to work right after the man attacked me.

25          Sitting in the car, I was scared something like that

1   would happen to me again.  I also felt sad.  I didn't want to

2   go to these places.  I didn't want to be doing prostitution.

3   Sometimes I would think about how I ended up here.  But the

4   fear of Jorge and what he would do to me and my daughter would

5   get me out of the car and into a client's home.

6           During the weekdays, I saw between 12 and 14 clients

7   every day.  On the weekends, I saw about 20 clients.  When I

8   was in the room alone with the client, I had to do whatever he

9   wanted.  In the back of my mind, I would think if I didn't

10  bring home enough money, Jorge will be angry.  And some of the

11  things I had to do with those men still make me feel sick when

12  I think about it.  But I had no choice, because I was

13  terrified of Jorge.

14          Almost all of the four years I was with Jorge in the

15  United States, I was forced to work seven days a week.

16  Weekdays started at 10 a.m. and lasted until 9 p.m., weekends

17  started at 8 p.m. and lasted until 4 a.m.

18          When it was that time of the month, I would usually

19  plead with Jorge about taking a day or two off because working

20  during that time felt especially bad, but he always said no.

21  He would give me a household sponge, the type of sponge you

22  would use to clean dishes with, and he would tell me to put it

23  up there to stop the bleeding so I could still work.  So I

24  did, every month seeing so many men every day.  I felt

25  disgusting having to take out those sponges.  My body hurt.

PROCEEDINGS                          23

1          Once my day was over, the driver would drop me off

2     at home.  If Jorge was there, I had to give him all my money.

3     If he wasn't, I left it out for him.  While in the car, I

4     would pray that Jorge wasn't drinking because he was more

5     violent when he was drinking.  Sometimes Jorge was not home

6     when I got there.  On those days, I would have some food and

7     go to sleep.

8          If Jorge was home, I was always tense trying to do

9     whatever I could not to make him angry.  I felt like during

10    those four years in the United States with him, I was spending

11    most of my time trying not to make him angry.

12         Jorge would get angry with me if I didn't make

13    enough money or if I told him I didn't want to do prostitution

14    anymore.  When Jorge was angry, he would become violent.  He

15    would destroy the room, punching the walls, throwing things,

16    slapping me, giving me bloody noses.  It's hard to remember

17    those times and all of the things he did.  I lived in fear.

18         Aside from hurting me, he would threaten me by

19    saying he would hurt my children.  He would tell me that if I

20    didn't want to work then his son would put my daughter into

21    prostitution in Mexico and then bring her here to the U.S.  My

22    daughter was young.  The thought of her doing prostitution was

23    one of the most horrible thoughts for me.

24         Jorge also got angry when I got pregnant.  I got

25    pregnant three times while Jorge was forcing me into

PROCEEDINGS                    24

1   prostitution.  The last time I got pregnant, I escaped Jorge

2   and had a beautiful baby whom I love very much.  I escaped to

3   keep him safe.

4        The other two times, I knew I was late for that time

5   of the month and I took pregnancy tests.  They came out

6   positive.  I told Jorge that I was pregnant.  I wanted to keep

7   the baby.  Both times he got very angry.  He got very scary

8   and violent.  When he calmed down, he told me that I couldn't

9   have it.  He said that if I had the baby, I wouldn't be able

10  to work.  He said that we needed the money.

11       I always pleaded with him to let me keep the baby.

12  He would then get angry again, throwing things, slapping me.

13  He also told me he would put my daughter to work.  He would

14  then calm down again and give me some tea and tell me to drink

15  all of the tea and then hand me some pills to take.  I knew

16  the tea and the pills were going to give me an abortion.  I

17  was scared of that and I didn't want it, but I was more scared

18  of Jorge, of what he would do if I didn't drink the tea.

19       The next 24 hours or so were very painful.  My

20  stomach cramped so bad and I started to bleed.  It felt like

21  it didn't want to come out.  I wanted to go to the doctor, but

22  Jorge said no.  He said they would ask questions.  I told him

23  that I needed to go to the doctor, but he refused.  It was

24  horrible and so painful.  I didn't want to drink the tea, but

25  I felt like I had no choice.

PROCEEDINGS                           25

1        The last time I got pregnant was the time I found

2   the courage to escape.  Jorge had been in Mexico and I had met

3   someone else who I cared about and I got pregnant with his

4   child.  That man gave me the courage and the support to

5   escape.  When Jorge found out I was pregnant, he insinuated I

6   would have to get an abortion, and I knew I couldn't do that

7   again.

8        Since escaping Jorge, I feel like I have been living

9   in hiding from him.  I have been scared for my safety and for

10  my family's safety.

11       After I found out that Jorge pled guilty, I tried to

12  let go of all the things Jorge did to me and all of the bad

13  things he made me do.  I actually wasn't planning on writing a

14  letter to the Court, but something happened which changed my

15  mind.

16       When I was in Mexico, Jorge tricked me into marrying

17  him.  I thought he loved me, but I think the whole time he

18  planned on making me do that type of work.  Since escaping, I

19  have wanted to get a divorce, but I have been too scared to go

20  to court.  I now feel safer asking the Court for a divorce,

21  but in order to do that first I have to show the Court that

22  Jorge is not the father of my child, because we were legally

23  married when my baby was conceived.

24       I know Jorge is not the father and he knows it, and

25  I have been told that Jorge has stated in his sentencing

PROCEEDINGS                                      26

1   papers that he is not the father of my child.  My attorney

2   spoke to his attorney and his attorney stated that Jorge was

3   out of the country during the possible time my baby was

4   conceived.

5          But now Jorge is telling the family court judge that

6   he could be the father and he wants a blood test.  Twice he

7   claimed to the family court judge he could be the father of my

8   child.  He has done this even though my attorney told me that

9   in the papers he has given the Court he says he's not the

10  father.

11         I can't believe after everything he has done to me

12  that he is still trying to harass me and control me, even from

13  jail.  He knows he could not be the father, but he isn't

14  willing to leave me alone.  That's why I wrote this statement.

15  He's not going to stop harassing me.  I will only be safe when

16  he is in jail.

17         I still have nightmares about Jorge where I wake up

18  screaming.  After the nightmares, I'm scared to leave the

19  house and I fear that he is going to find me.  What he did to

20  me for all of those years, what he forced me to do, I carry

21  with me every day.  All of those years, all of the men I had

22  to be with.  And now he is still trying to make my life

23  harder.  He won't let me live in peace.  He is still angry I

24  escaped him and he is punishing me the only way he can,

25  through my son.

PROCEEDINGS                           27

1    Thank you for listening to me.

2    THE COURT:  Thank you, Counsel.

3    Would the attorneys like to be heard on application

4    of the 3553(a) factors?

5    MR. PERLMUTTER:  Yes, Your Honor.

6    THE COURT:  Okay.

7    MR. PERLMUTTER:  Your Honor, first of all, I want to

8    clarify something about the letter that was submitted by Jane

9    Doe #1, because it blatantly misrepresents my discussions with

10   her attorney and I think in a way that is highly significant.

11   What was conveyed to the attorney for Jane Doe #1 is

12   that my client wanted a paternity test to simply rule out that

13   there was no chance that this child was his.  The dates that

14   he was out of the country --

15   THE COURT:  But you're not questioning that, in

16   fact, he admitted to the probation officer that this child is

17   not his child?

18   MR. PERLMUTTER:  I'm not denying that, Judge.  But

19   what he wants to do is he wants to make absolutely certain

20   through a paternity test that he's correct in that statement.

21   He does not believe the child is his, but the overlap of when

22   he was out of the country and when she conceived cannot

23   completely rule out that fact, and because of that he does not

24   want to live as an incarcerated individual with any residual

25   belief that the child could be his.

PROCEEDINGS                              28

1        It's not an attempt to exercise control.  It's not

2   an attempt to reach beyond the jail to try to manipulate this

3   woman.  It's none of that at all.

4        THE COURT:  I don't know what it is, but I do

5   question why your client would even ask for a paternity test

6   when, based on his reports to the probation officer, he

7   strongly believes that this is not his child.  He's admitted

8   to other children, including one that he hasn't met or seen,

9   but states over and over again that Jane Doe #1 got pregnant

10  by someone else and that is not his child.

11       MR. PERLMUTTER:  Because the only way he can be

12  absolutely 100 percent certain is with a paternity test,

13  because when he matches up the dates and he matches up his

14  relationship with Jane Doe #1 and what may have occurred

15  between them of a sexual nature, he cannot now be absolutely

16  100 percent certain and he wants to be 100 percent certain

17  that the child is not his.

18       THE COURT:  Okay.

19       MR. PERLMUTTER:  That's all.  And I think that -- I

20  think it needs to be clarified.

21       Judge, you know, I'm going to rest on the papers

22  that I submitted in my memorandum in aid of sentencing, but,

23  you know, when I -- when the pleas happened in this case, my

24  client went last before Judge Levy.  And it was a very

25  emotional plea.  It was one of those times that I regretted

SHERRY BRYANT, RMR, CRR

1    that the plea had actually gone to the magistrate and was not

2    taken directly by the Article III judge, because after the

3    proceeding Judge Levy would query that it just seemed to be an

4    odd situation, that the reaction of each of the defendants was

5    so emotional in taking the plea that it didn't really square

6    up with what appeared to be on paper or in the allocution.

7            And my understanding of this -- and we prepped this

8    case for trial -- was that my client, he came in the country

9    with this woman.  And you can even see in the statement, he's

10   saying, you need to work because we need to make money.  This

11   was an economically-motivated crime by people misguided about

12   their reasons for coming to the United States and engaging in

13   conduct that we know is wrong.

14           But wherever you turn in this case, you see that,

15   that this was an economically-motivated crime by people where

16   the line got crossed when they were here, and Jane Doe #1 in

17   particular did not want to continue in the activity.

18           It's interesting to note that in her description of

19   the typical day, when she would wake up at 9:00 in the morning

20   Jorge wasn't there, and the reason why he wasn't there is he

21   was off working.  He was off doing construction work, because

22   the purpose of coming to America for both of them was to earn

23   money and to send it back home, was to be able to earn money

24   and to be able to support family and eventually return back to

25   Mexico.

PROCEEDINGS                    30

1          There's no question that that idea was misguided and

2     that the path was misguided and that they wandered off the

3     path, and my client wandered off the path far more than is

4     absolutely acceptable.  I understand that.  But he is a person

5     of limited education from a place of grinding poverty and

6     hopelessness.  And he will be punished, he will be severely

7     punished with even the mandatory minimum in this case that

8     probation is recommending, 180 months.

9          I'm going to ask that Your Honor impose that

10    sentence, because I think that that is the right sentence.  I

11    think that Congress has laid down mandatory minimums in this

12    area and those mandatory minimums are sufficient but not

13    greater than necessary to meet the ends of justice in this

14    case.  I think it's the right result.  I'm going to ask that

15    you impose that, Your Honor.

16             THE COURT:  Okay.  Thank you, Counsel.  Counsel.

17             MR. WALLENSTEIN:  Your Honor, on behalf of Ricardo

18    Estrada-Tepal, I would join in Mr. Perlmutter's argument to

19    the extent that it is applicable to Ricardo.

20             And I point out that in my memorandum and in the

21    PSR, it's clear that Ricardo comes from the same place that

22    Jorge does.  They are all brothers.  They come from a place in

23    rural Mexico that is just absolutely abject poverty.

24             Ricardo has attended no more than a couple of days

25    of school in his entire life.  He speaks only a word or two of

PROCEEDINGS                          31

1    English.  He is illiterate in Spanish.  He cannot read.  He

2    cannot write.

3           His work history, even while here during the course

4    of this conduct, he worked in menial jobs.  He delivered food.

5    He worked as a dishwasher.  He worked in some construction.

6    He worked every day in order to support himself and to support

7    his wife.

8           He has a child who is residing in Mexico.  That

9    child, who is now I believe three years old, resides with the

10   child's grandparents with whom Ricardo is in contact in order

11   to have contact with his child.  He is still in contact with

12   his wife, who is one of the victims in this case, to the

13   extent that he can be through her father.

14          I believe that he was brought into this conspiracy,

15   brought into this conduct by his brothers.  He is easily led.

16   He is very, very emotional.  He is very, very sorry for what

17   he's done.

18          I think when the Court considers all of the

19   factors -- I won't get into the offense conduct, the Court is

20   fully familiar with that.  But with respect to Ricardo's

21   history and his characteristics, which I think are clearly

22   important here, he is going to spend a considerable time in a

23   prison where he is really in a strange land.

24          He is vulnerable himself in prison, because of his

25   lack of education, because of his lack of language skills.

PROCEEDINGS                        32

1   And the mandatory minimum for him in this case is 15 years;

2   he's aware of that.  Every conversation I've had with him when

3   I mentioned that he spent the next five or ten minutes crying.

4   I think I probably would too, faced with that kind of time.

5           But I think that under all of the circumstances

6   here, considering all of the factors, that 15 years is

7   sufficient and not greater than necessary.  Congress says he

8   has to spend 15 years in prison for this crime.  I don't think

9   he should spend a day more than that.  That's a very, very

10  long time, no matter how you slice it.

11          So I would ask the Court to impose the mandatory

12  minimum sentence and note that that is the Probation

13  Department's recommendation, and that is within the advisory

14  guidelines as well.

15          THE COURT:  Okay.  Thank you, Counsel.

16          MR. LIND:  Thank you, Judge.  I have a little bit of

17  a different take than my co-counsel.  Almost exactly a year

18  ago the three of us were here in this Court being appointed to

19  replace the second set of attorneys.  And I remember the

20  demeanor of the defendants on that day and on subsequent days

21  when they were in court or certainly with us.  They were

22  feisty.  They were truculent.

23          Look at them today, Judge.  They are remorseful,

24  they really are.  And I think that what's happened over the

25  last year was a recognition, at least by my client and I think

1    it's the same for the other defendants, that the gravity of

2    what they've done, and I think that started shortly after

3    their guilty pleas here.  They're changed.  My client, he is

4    very remorseful about that.  I'm not saying by any means it's

5    an excuse, but we're going forward today with what should be

6    going on for the rest of his life or a good part of it.  And

7    he is remorseful.  They are sorry about what's happened,

8    Judge.

9           So then the question is, what's the appropriate

10   sentence?  My client's minimum is ten years, unlike the other

11   two defendants.  The probation office recommends 156 months.

12   I think that that's an appropriate sentence in a case like

13   this.  It's certainly a significant sentence for anyone.

14          And the more important thing is, like I said, Judge,

15   he recognized the gravity of something like this in terms of

16   going forward.  So I think that that's what I have to say on

17   his behalf.

18          THE COURT:  Okay.  Thank you.

19          As to each of the defendants, you have a right to

20   make a statement to me.  It's really up to you whether you

21   would like to do so, but if there's anything you would like me

22   to consider before I sentence you, please feel free to address

23   me.

24          DEFENDANT JORGE ESTRADA-TEPAL:  May I start?

25          THE COURT:  You may.

PROCEEDINGS                    34

1        DEFENDANT JORGE ESTRADA-TEPAL:  Good morning, Your

2   Honor.  With all the respect that is your due as also with all

3   the respect that is due the government of the United States,

4   present in the person of Madam Prosecutor, I wanted to

5   apologize and ask for forgiveness for this offense that

6   perhaps because of my ignorance or my lack of resources I

7   committed, without knowing that it showed a lack of respect

8   for this great nation.

9        The only thing I ask is that you have consideration

10   of me.  I'm a human being and human beings typically make

11   mistakes, and this mistake perhaps was caused by the poverty I

12   endured in Mexico.  So then, Your Honor, I ask forgiveness and

13   I place myself in your hands and in the hands of God.  Thank

14   you very much.

15        THE COURT:  Thank you, Mr. Jorge Estrada-Tepal.

16        MR. WALLENSTEIN:  Judge, my client would like to

17   address you briefly.

18        THE COURT:  Okay.

19        DEFENDANT RICARDO ESTRADA-TEPAL:  Good morning, Your

20   Honor --

21        THE COURT:  Good morning, Mr. Estrada-Tepal.

22        DEFENDANT RICARDO ESTRADA-TEPAL:  -- and government

23   of the United States.  I would also like to ask forgiveness

24   for the things I did.  I wanted something better for my child.

25   He's small.

PROCEEDINGS                    35

1          And unfortunately, I became involved in things that
2    were not for me.  I now realize that people who devote
3    themselves to this have sort of like, I don't know, a gift.  I
4    tried to do it, but this didn't work and now I'm sorry.  And
5    I'm sorry for my family, for my child who sometimes goes
6    hungry.  And I thank my wife, who is here and is supporting
7    him.
8          As I told -- I would like, as I told my in-laws,
9    that I'm going to try really, really hard so I can go forward
10   for the sake of my child.  It's the only family I have left,
11   because unfortunately, my parents don't exist anymore.  And I
12   want to get ahead, even being in prison.  That's all.  Thank
13   you.
14              THE COURT:  Thank you.
15              MR. LIND:  May I have one moment, Judge?
16              THE COURT:  Yes.
17              (Defendant confers with counsel.)
18              MR. LIND:  Okay.  Thank you, Judge.
19              DEFENDANT VICTOR ESTRADA-TEPAL:  Good morning, Your
20   Honor.
21              THE COURT:  Good morning, Mr. Victor Estrada-Tepal.
22              DEFENDANT VICTOR ESTRADA-TEPAL:  With all the
23   respect that is your due, yours and this great country, I ask
24   forgiveness for having committed this offense.  As my brother
25   said, we did it because of our poverty.  We are very sorry

PROCEEDINGS                              36

1   today.

2            So, well, sometimes I have -- lack words, lack the

3   words, but I don't -- Your Honor, I'm just asking for

4   forgiveness and I'm sorry that I don't have a gift for words.

5            I just ask for a chance to some day be back together

6   with my family, with my wife, so I can help her.  She suffers

7   from juvenile arthritis, and in Mexico with that illness

8   doctor's treatments are very expensive.  And this is why I

9   would like to continue ahead, get ahead, so that I can go back

10  with her some day and help her and support her.

11           I acknowledge that we made a great mistake, but

12  today we are very sorry.  In these 700 days of imprisonment,

13  we are very sorry.  Thank you very much.

14           THE COURT:  Thank you, Mr. Victor Estrada-Tepal.

15           Would the government like to be heard?

16           MS. MERKL:  Just very briefly, Your Honor.  The

17  actions of the defendants, in the government's view, speak for

18  themselves.  As detailed in the government's sentencing

19  submission and in the PSRs, the crimes committed in this case

20  really could not be more serious.

21           And as the Court fully appreciates, the victims who

22  came forward and survived this conduct, their voices need to

23  be heard in the Court's formulation of sentence.  And I'm not

24  going to belabor the point and I'm not seeking any enhancement

25  from the guideline estimates included in the government's plea

PROCEEDINGS                    37

1    agreements, which as to Jorge Estrada-Tepal we estimated a

2    range of 210 to 262 months; as to Victor Estrada-Tepal, we

3    estimated a range of 168 to 210 months; and as to Ricardo, we

4    estimated a range of just below the applicable guidelines, so

5    an effective guideline sentence of 180 months.

6              That being said, Your Honor, in the government's

7    view, one of the things I wanted to respond to is Mr.

8    Perlmutter's comment regarding the demeanor of the defendants

9    at the guilty plea.

10             The defendants were emotional during the guilty

11   plea, but in the government's assessment of the history of

12   this case, it is not because of the unique circumstances of

13   their history or the facts of the case, but, rather, goes, in

14   the government's opinion, to at that time a lack of

15   appreciation for the seriousness of their offense conduct.

16             Perhaps the defendants have turned a corner, as Mr.

17   Lind has argued, but the defendants in this case from the

18   beginning, as Your Honor knows, were not fully appreciating

19   the gravity of the process, the seriousness of the crimes with

20   which they were charged.  And at the guilty plea proceeding --

21   this is obviously just attorneys speaking, we're not

22   witnesses -- I don't think the demeanor of the defendants

23   should weigh in the Court's assessment of the evidence and the

24   3553(a) factors as they should apply here.

25             The seriousness of the offenses, the harm inflicted

PROCEEDINGS                    38

1   on the victims, and the need for punishment in these very

2   serious cases strongly favors a sentence squarely within the

3   guidelines range as estimated by the government.  Thank you.

4          THE COURT:  Thank you, Counsel.  Does anyone else

5   wish to be heard?  Okay.

6          I am going to address the sentence as to each

7   defendant separately.  So I have taken into account so many

8   things and I nevertheless found it very hard here to determine

9   what is the appropriate sentence.

10         For Jorge Estrada-Tepal, starting with you, your

11  attorney made a number of arguments on your behalf, including

12  the harshness of the conditions at the MDC, your post-arrest

13  rehabilitation and your family circumstances.

14         As to your family circumstances, it's not a basis

15  for a departure here, because your circumstances aren't such

16  where this child and/or the child's mother -- and I understand

17  this to be referring to your youngest child -- are dependent

18  on you.  This is the child that you haven't met and that you

19  are hoping to meet and form a relationship with.  It doesn't

20  satisfy the legal requirements for a departure, but certainly

21  it is a factor that I have considered in terms of trying to

22  fashion an appropriate sentence.

23         I have no doubt that you're remorseful, both as you

24  argued to me today and as your attorney did in his submission.

25         As to the conditions of confinement at the MDC,

PROCEEDINGS                    39

1    where you've been for approximately 18 months, I don't find

2    that as a basis for a departure here either.  In considering

3    that argument, I considered the presentation of Jane Doe #1,

4    who argues that for four years she lived under very

5    challenging circumstances that she referred to as horrible and

6    which still give her nightmares.  So, in comparing your 18

7    months in pretrial detention at the MDC and comparing that to

8    the four years under which Jane Doe #1 had to live, I don't

9    find that to be a persuasive argument at all.

10         I do reflect on the seriousness of the crime here,

11   and as I understand the crime, and counsel or Mr. Jorge

12   Estrada-Tepal, you can correct me if I'm wrong, but it wasn't

13   just a matter of these two individuals decided to come to the

14   United States to make a better life in Mexico, because if that

15   were the case and if this was, in fact, a couple who wanted a

16   better life then Mr. Jorge Estrada-Tepal would not have forced

17   Jane Doe #1 to engage in prostitution four years under these

18   circumstances where she had to endure having sex with all of

19   these men, none of whom she wanted to have sex with, every

20   day, seven days a week, for this extended period of time.

21   That is not conduct that someone who's in a loving

22   relationship with an individual would engage in.

23         And so that's not the impression I get in looking at

24   the facts.  The impression I am left with is that the

25   defendant here, yes, wanted a better life, but not for him and

PROCEEDINGS                    40

1   Jane Doe, just for himself.

2            So I took into account the seriousness of the crime.

3   I did take into account also the fact that you have tried

4   since your incarceration to do better.  You've taken the GED

5   program and I believe you're waiting for your results.  I took

6   into account the background of you and your brothers, the fact

7   that you grew up in poverty with a father who was an

8   alcoholic.

9            Taking it all into consideration and also taking

10  what Jane Doe had to say about what she had to engage in for

11  those four years, I concluded that a sentence within the

12  advisory guideline range is appropriate, and so I am

13  sentencing you to 210 months in custody.

14           In addition to all that I've mentioned, I also took

15  into account the fact that you forced Jane Doe #1 to abort two

16  of the pregnancies even though she didn't want to.

17           And I consider also the fact that you are now

18  trying -- well, your attorney says you're doing it to exclude

19  all possibility, but based on my reading of your statements to

20  the Probation Department, it was clear to me that you deny any

21  involvement with this child or that this child, Jane Doe #1's

22  child is your child.

23           So it does suggest to me that by now reaching out

24  and asserting or at least trying to determine whether, in

25  fact, there's a possibility this could be your child that

PROCEEDINGS                    41

1  you're doing this not for any peace of mind on your part but

2  really to continue to make Jane Doe #1 suffer more than she's

3  had to suffer for the time that she lived with you.  But I

4  accepted your attorney's argument today that, really, you just

5  wanted to be sure, and so that factor is neutral in my mind

6  and ultimately didn't influence my decision here.

7            I decide that in balancing all of the factors, 210

8  months is an appropriate sentence.  It is the sentence I

9  impose on each count, to run concurrently.

10           I'm also imposing restitution in the amount as

11  determined to be the full amount owed to all of the victims

12  who have identified their loss $1,033,336, and I'm imposing

13  that jointly and severally with Victor and with Ricardo.

14  Restitution is due immediately and payable at a rate of $25

15  per quarter while you're in custody and at a rate of 10

16  percent of gross income per month while you're on supervised

17  release.

18           I also impose five years of supervised release, with

19  these special conditions:  You must comply with the order of

20  restitution; you shall make full financial disclosure to the

21  probation officer; you shall comply with the sex offender

22  registration requirements mandated by law; and you shall not

23  possess a firearm, ammunition or destructive device; if you

24  are deported, you cannot reenter the United States illegally.

25           Is there a forfeiture order here, Counsel?

1          MS. MERKL:  Your Honor, there is no property to

2     forfeit and restitution takes precedence, so we would seek

3     restitution over forfeiture in this instance.

4          THE COURT:  I know you're remorseful, Mr. Jorge

5     Estrada-Tepal, but the crime you committed was really

6     horrendous.  I do hope that you are able to serve your time,

7     that you continue your education, if at all possible, while

8     you're incarcerated, and that ultimately you will get the

9     opportunity to reunite or to unite with the son that you

10    haven't yet met and to establish a relationship with that son.

11         Turning to Victor Estrada-Tepal, as with your

12    brother Jorge, I took into account the fact that you were all

13    raised under very challenging circumstances in Mexico, the

14    fact that your father was an alcoholic, didn't really provide

15    for the family, the fact that you left the family at 14 to

16    work in construction, that you've always tried to be

17    responsible, as did your brother Jorge, and tried to find a

18    way to survive.  I have no doubt that you're remorseful, as

19    your attorney argues, and I took that into account also.

20         As to your rehabilitation efforts, I acknowledge

21    that you have stayed out of trouble since you've been

22    incarcerated.  I don't have any record of any misbehavior on

23    your part, but I also don't have any record of any other

24    rehabilitative conduct other than the fact that you've been a

25    model prisoner.

PROCEEDINGS                    43

1          I took into account, again, the nature of the crime

2    and how serious it is and the fact that you recruited I

3    believe it was Jane Doe #4 in this case.

4          Jane Doe #4 is his wife, correct?

5          MS. MERKL:  I believe, Your Honor, that's Jane Doe

6    #5.

7          THE COURT:  Jane Doe #5, okay.

8          MS. MERKL:  I'm going to double-check.

9          THE COURT:  But that you got her involved in

10   prostitution when she was still a minor, you brought her to

11   this country and had her engage in prostitution, and then you

12   had her assist you with the crimes and would have her instruct

13   others on how to go about making money.  I considered all of

14   that, and ultimately I concluded that a sentence within the

15   guideline is also appropriate for you.

16         Your attorney argues for the mandatory minimum of

17   ten years.  I don't believe that's sufficient, and so I am

18   sentencing you to 210 months in custody.  I believe it is

19   sufficient but not greater than necessary to comply with the

20   purpose of sentencing here.  It punishes you for the crime

21   that you committed, which is a serious crime, and in balancing

22   all the factors it is what I believe to be an appropriate

23   sentence.

24         MS. MERKL:  Your Honor, I apologize.  I misspoke.

25   It's Count 5, but it is Jane Doe #4.  My mistake.

PROCEEDINGS                    44

1          THE COURT:  I understood it to be Jane Doe #4, but I

2    believe Mr. Victor Estrada-Tepal understands that I'm

3    referring to his wife, who was also a defendant in this case.

4          I am sentencing you to 210 months on each count,

5    with the sentence to run concurrently.  I impose restitution

6    in the amount of $1,033,336, jointly and severally with your

7    codefendants Jorge and Ricardo.  Restitution is due

8    immediately and payable at a rate of $25 per quarter while in

9    custody and at the rate of 10 percent of gross income per

10   month while on supervised release.

11         I also impose five years of supervised release, with

12   the following special conditions:  You must comply with the

13   order of restitution; you shall make full financial disclosure

14   to the probation officer; you must comply with the sex

15   offender registration requirements mandated by law.

16         Counsel, does your client have a drug treatment

17   problem?

18         MR. LIND:  I don't think so, Judge.

19         THE COURT:  The Probation Department is recommending

20   that your client participate in a drug treatment program.  I

21   don't recall that there is a drug problem, so I'm not going to

22   impose that condition; but certainly, if it turns out that

23   there is the Probation Department can require that he

24   participate in some sort of program.

25         Mr. Victor Estrada-Tepal, you shall not possess a

PROCEEDINGS                    45

1   firearm, ammunition or destructive device, and if you are

2   deported you may not reenter the United States illegally.  I

3   am not imposing a fine.  I find that you are not able to pay

4   one.  I do impose a $200 special assessment.

5           Going back to Jorge, I don't recall whether or not I

6   stated that I'm not imposing a fine, but I want to put on the

7   record that I'm not imposing a fine as to him either.  I find

8   that you are not capable of paying a fine, but I am imposing a

9   $200 special assessment.

10          Do you have a question, Mr. Perlmutter?

11          MR. PERLMUTTER:  Judge, it was noted in the PSR that

12   my client has --

13          THE COURT:  An alcohol problem.

14          MR. PERLMUTTER:  -- a serious problem with alcohol,

15   and I would ask that there be a recommendation that he be

16   admitted to the BOP residential drug treatment program, the

17   RDAP program, if they deem him to be appropriate for that.  I

18   don't know if they will, because of his immigration status.

19   But if it's at all possible, I would like him to be considered

20   for that.

21          THE COURT:  Well, I'll recommend that he receive

22   treatment for his alcohol problem, whichever way they deem

23   appropriate for him to obtain that treatment.  I don't know

24   what would be the best program.  They will have to make that

25   determination while he's incarcerated, but I will make that

PROCEEDINGS                                46

1   recommendation.

2           MR. PERLMUTTER:  Also, Your Honor, I request that a

3   recommendation be made, to the extent possible, that the

4   brothers be housed either in the same facility or as near --

5   in the same facility, because they're going to be incarcerated

6   for such an extended period of time.

7           THE COURT:  Because otherwise, they can't see each

8   other.

9           MR. PERLMUTTER:  Exactly.

10          THE COURT:  I'll make that recommendation as to both

11  Victor Estrada-Tepal and Jorge Estrada-Tepal, whose sentences

12  I've now imposed, that they be housed in the same facility if

13  at all possible, so that they have the opportunity to

14  communicate with each other in some fashion.

15          Turning now to Ricardo Estrada-Tepal, I believe I

16  had the most difficult time with determining what is an

17  appropriate sentence for you, Ricardo.

18          I took into account similar factors to what I took

19  into account with regard to your brothers, your background,

20  the circumstances under which you were raised, the fact that

21  your father was an alcoholic, that life was challenging for

22  all of you in Mexico.  But, again, I had to weigh that against

23  the seriousness of the crime here.

24          And as to you, we're talking about Jane Does #2 and

25  3.  And Jane Doe #2 wrote a letter to the Court explaining the

PROCEEDINGS                               47

1   psychological effects that your activity still has on her to

2   this day.  So I had to take that into account also.

3            But in balancing all the factors here, I ultimately

4   concluded that a guideline sentence is appropriate, and I'm

5   sentencing you to 180 months in custody.  I find that it is

6   sufficient but not greater than necessary to comply with the

7   purpose of sentencing, that it reflects the seriousness of the

8   crime here.

9            I took into account that one of the victims here is

10  your wife, as you pointed out, and the other is someone else.

11  But, as I mentioned, Jane Doe #2's letter, the letter from

12  Jane Doe #2 explaining the effects and the fact that she's

13  still trying to put her life together and the fact that even

14  when she was very sick she was still forced to engage in this

15  conduct, and even after she was taken to the hospital and she

16  was given medication that she wasn't even provided with that

17  medication, all because the defendants were more concerned

18  about earning money than the welfare of Jane Doe #2.

19           So, in assessing all the factors, I conclude that a

20  sentence of 180 months in custody on each count to run

21  concurrently is an appropriate sentence.  I also impose

22  restitution in the amount of $1,033,336, which is imposed

23  jointly and severally with Jorge and Victor.

24           The restitution amount, as I indicated earlier and

25  I'll state again for the record, as to each defendant includes

PROCEEDINGS                     48

1    864,000 to Jane Doe #1, $5,275 to Jane Doe #2, $13,261 to Jane

2    Doe #3, and $150,800 to Jane Doe #5.

3              Restitution is due immediately and payable at a rate

4    of $25 per quarter while in custody and at a rate of 10

5    percent of gross income per month while on supervised release.

6              I also impose five years of supervised release with

7    the following special conditions:  You shall comply with the

8    order of restitution; you must make full financial disclosure

9    to the probation officer; you must comply with the sex

10   offender registration requirements that are mandated by the

11   law; you shall not possess a firearm, ammunition or

12   destructive device; and if deported, you may not reenter the

13   United States illegally.

14             I do not impose a fine.  I find that you are not

15   capable of paying a fine.  I do impose a special assessment of

16   $200.

17             And Mr. Ricardo Estrada-Tepal, I did also take into

18   account that while you and all your brothers are uneducated

19   that you are even more so, having only spent two days in

20   school.  I took that into account.

21             The sentences imposed as to Jorge Estrada-Tepal and

22   Victor Estrada-Tepal are at the low end of the guidelines as I

23   determined them to be.  And as for Ricardo Estrada-Tepal, it

24   is within the guideline range.

25             Each of you can appeal your conviction if you

SHERRY BRYANT, RMR, CRR

1    believe somehow that your guilty plea was unlawful or

2    involuntary or if there is some other fundamental defect in

3    the proceedings that was not waived by your guilty plea.

4           Under some circumstances, a defendant has a right to

5    appeal his or her sentence.  A defendant also has the right to

6    waive that as part of their plea agreement, and I believe that

7    each of you entered into a plea agreement which waives your

8    right to appeal your sentence.  While such waivers are

9    generally enforceable, if you believe the waiver is not valid

10   you can present that theory to the appellate court.

11          Any notice of appeal must be filed within 14 days of

12   the filing of the judgment, the judgment will be filed today,

13   or within 14 days of the filing of a notice of appeal by the

14   government.  If any of you request, the Clerk of the Court can

15   file a notice of appeal on your behalf.  If you cannot afford

16   to pay the cost of an appeal or pay for appellate counsel, you

17   have the right to apply for leave to appeal in forma pauperis,

18   which means you can apply to have the Court waive the filing

19   fees.  On appeal, you can also ask for Court-appointed

20   counsel.

21          Are there open counts that the government seeks to

22   dismiss at this time?

23          MS. MERKL:  Yes, Your Honor.  The government would

24   seek to dismiss all counts as to which the defendants have not

25   pled guilty.

PROCEEDINGS                    50

1          THE COURT:  I dismiss the open counts as well as the

2   underlying indictments.

3          Is there anything else that we need to resolve as to

4   Mr. Ricardo Estrada-Tepal?

5          I also suggest that you be housed at a facility with

6   your brothers so that all three of you will have the

7   opportunity to communicate with each other.

8          Is there anything else from anyone?

9          MR. WALLENSTEIN:  Judge, with respect to Ricardo,

10  there is an appellate waiver in his plea agreement at 180

11  months, so I believe that at this point he has waived his

12  right to appeal.  However, if he contacts me within the next

13  14 days, I will file a notice on his behalf if he so requests.

14         THE COURT:  Okay.  Thank you, Counsel.  Is there

15  anything else?

16         Mr. Jorge, Ricardo and Victor Estrada-Tepal, I wish

17  you all the best of luck.  I hope that to the extent you can

18  you will take advantage of any opportunities while you're

19  incarcerated to improve your circumstances, whether it's

20  getting your GED, your college degree, learning to write or to

21  speak, whether it's Spanish or English.

22         You should take advantage of all that's offered so

23  that when you are released you will be able to provide for

24  your families.  And I do hope that you get the opportunity to

25  interact with your families, whether it's now while you're

PROCEEDINGS                                    51

1    incarcerated or after, and that you go on to be productive

2    members of society.  Only you can determine that, but I would

3    urge you to take advantage of any opportunity to better

4    yourselves.  Okay?  Good luck.

5              MS. MERKL:  Thank you, Your Honor.

6              (Whereupon, the proceedings were adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

52

          I certify that the foregoing is a correct

transcript from the record of proceedings in the

above-entitled matter.


                    /s/   Sherry Bryant
                    Sherry Bryant, RMR, CRR
                    Official Court Reporter